**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| JEAN BOSCO MUTARAMBIRWA, <br><br> *Plaintiff,* <br><br> v. <br><br> TOWNSHIP OF WEST ORANGE, et al., <br><br> *Defendants*. | Civil Action No. 20-6155 <br><br><br> **OPINION** <br><br><br> April 24, 2026 |

**SEMPER**, District Judge.

      **THIS MATTER** comes before the Court upon the November 14, 2025 motion of the State Defendants[1] to dismiss the Third Amended Complaint ("TAC") of *pro se* Plaintiff Jean Bosco Mutarambirwa, (ECF 104), pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. (ECF 186, "State Motion" or "State Mot.") The Township Defendants[2] also moved to dismiss Plaintiff's TAC on November 17, 2025. (ECF 187, "Town Motion" or "Town Mot.") Plaintiff opposed Defendants' motions on December 1, 2025. (ECF 192, "Opposition to State" or "Opp. to State"; ECF 191, "Opposition to Town" or "Opp. to Town.") Defendants replied on December 15, 2025. (ECF 195, "State Reply"; ECF 194, "Town Reply.") The Court has decided the motions upon the submissions of the parties, without oral argument, pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the

---

[1] The State Defendants are Attorney General Matthew J. Platkin, in his official capacity as Attorney General of New Jersey, Governor Phil Murphy, in his official capacity as Governor of New Jersey, and the Honorable Louise G. Spencer. (*See generally* TAC.)

[2] The Township Defendants are the Township of West Orange, the Honorable Dennis Dowd, and Sergeant George Lopez. (*See generally* TAC.)

reasons stated below, the State and Township Defendants' Motions to Dismiss Plaintiff's TAC are **GRANTED** and Counts I-VII against the State and Township Defendants are **DISMISSED** with prejudice. The Court has also *sua sponte* reviewed Plaintiff's TAC for sufficiency as to *pro se* Defendant Mediatrice Mutarambirwa ("Mediatrice") pursuant to Federal Rule of Civil Procedure 8(a). For the reasons stated below, Count IV of Plaintiff's TAC against Defendant Mediatrice is **DISMISSED** with prejudice.

I.      **FACTUAL BACKGROUND AND PROCEDURAL HISTORY[3]**

Plaintiff brings this action stemming from an April 2020 restraining order proceeding in the West Orange Municipal Court, Family Division ("New Jersey Family Court"). (TAC ¶¶ 17-54.) In early 2020, Plaintiff alleges that Mediatrice, Plaintiff's wife at the time of the events giving rise to this action, informed him that she had "contracted a venereal disease as a result of an extra-marital affair." (*Id.* ¶ 16.) Mediatrice then initiated a temporary restraining order ("TRO") proceeding and alleged that Plaintiff had abused her verbally and physically. (*Id.* ¶¶ 17-19.) Defendant Judge Dennis Dowd issued a TRO on April 6, 2020. (*Id.* ¶ 18.) Defendant Judge Louise Spencer subsequently issued a final restraining order ("FRO") on May 13, 2020. (*Id.* ¶¶ 21-23.) Judge Spencer found that Plaintiff had committed the predicate offense of Harassment under the New Jersey Harassment Statute, N.J. Stat. Ann. § 2C:33-4(a) & (c), due to Plaintiff's "controlling" of Mediatrice. (TAC ¶¶ 21-23, 29.) And pursuant to her authority under § 2C:25-28(j) of the New Jersey Prevention of Domestic Violence Act ("PDVA"), N.J. Stat. Ann. §§ 2C:25-17 to -35, Judge

---

[3] When considering a motion to dismiss under Rule 12(b)(6), the Court is obligated to accept as true allegations in the complaint and all reasonable inferences that can be drawn therefrom. *See Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989). The Court also considers any "document integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). The Court construes pro se filings liberally. *See Marcinek v. Comm'r*, 467 F. App'x 153, 154 (3d Cir. 2012) (holding that courts are "under an obligation to liberally construe the submissions of a pro se litigant").

Spencer forbade Plaintiff from possessing a firearm. (TAC ¶¶ 21-23.) Plaintiff filed an appeal on May 26, 2020. (*Id.* ¶ 38.) Judge Spencer then presided over a proceeding to address the custody of Plaintiff and Mediatrice's two children. (*Id.* ¶¶ 39-44.) On June 12, 2020, Judge Spencer issued a Gag Order instructing Plaintiff and Mediatrice to not make disparaging remarks about each other in front of their children. (*Id.* ¶ 46.) The Appellate Division of the Superior Court of New Jersey affirmed the FRO on May 7, 2021.[4] (ECF 52-1). Plaintiff applied for a permit to possess a firearm in the State of New Jersey on June 4, 2021. (TAC ¶ 50.) Plaintiff received a denial of a firearm permit from Defendant George Lopez of the West Orange Police Department on August 15, 2021. (*Id.* ¶¶ 51-52.) Around this same timeframe, Mediatrice found Plaintiff's biometric gun safe in her residence and notified the New Jersey Family Court. (*Id.* ¶¶ 228-33.) On October 8, 2021, the court ordered Plaintiff to open his gun safe at the West Orange Police Department. (*Id.* ¶¶ 234-36.) Plaintiff complied and the gun safe did not contain a firearm. (*Id.*) The Supreme Court of New Jersey denied Plaintiff's petition for certification on November 16, 2021. (ECF 61-1.) The New Jersey Family Court terminated Plaintiff's custody of his two children on December 22, 2021, for violating the Gag Order. (TAC ¶¶ 53-54.)

On May 20, 2020, prior to exhausting the appellate process in state court, Plaintiff initiated this federal civil action. (*See* ECF 1.) In the Complaint, Plaintiff challenged the TRO and FRO

---

[4] The Appellate Division found that the FRO was predicated on:

> [Plaintiff's] repeated actions to compel [Mediatrice] to return to their bedroom, including removing a door from a guestroom where she was sleeping, which he did with the express intent to cause her to "come over" to their bedroom; preventing her from sleeping on an air mattress in another room by deflating it and grabbing the pump from her when she tried to reinflate it; preventing her from sleeping on another mattress in the children's room by moving it to the parties' bedroom where he was sleeping; sending her late-night texts threatening to replace her, and repeatedly demeaning [her] in the presence of their children, including questioning their eleven year-old son about engaging in incest with [Mediatrice].

(ECF 52-1 at 16-17.)

by alleging that the New Jersey Family Court violated his constitutional rights. (*See generally id.*) Plaintiff subsequently filed three amended complaints, filing the TAC on August 25, 2022. (ECF 4; ECF 6; ECF 104.) In the TAC, Plaintiff facially challenges the New Jersey Harassment Statute, N.J. Stat. Ann. § 2C:33-4(a) & (c), as unconstitutionally overbroad and vague in violation of the First Amendment (Count I). (TAC ¶¶ 55-122.) Plaintiff also alleges that the PDVA, N.J. Stat. Ann. §§ 2C:25-17 to -35, is unconstitutional in violation of his Second, Fourth, and Fourteenth Amendment rights (Counts II-III, VII). (TAC ¶¶ 123-67, 222-36.) Plaintiff further claims that the Township Defendants and Defendant Mediatrice engaged in malicious use of process (Count IV). (*Id.* ¶¶ 21-22.) Plaintiff also alleges that the State and Township Defendants violated his equal protection rights (Count V). (*Id.* ¶¶ 179-94.) Lastly, Plaintiff claims that the June 12, 2020 Gag Order is an unconstitutional prior restraint on speech issued without due notice in violation of his First and Fourteenth Amendment rights. (Count VI). (*Id.* ¶¶ 179-94.)

The State and Township Defendants filed motions to dismiss Plaintiff's TAC on September 26, 2022. (ECF 115, 116). Defendant Mediatrice filed a motion to dismiss Plaintiff's TAC on December 14, 2022. (ECF 135). The Court administratively denied Defendants' motions without prejudice on December 20, 2023, pursuant to a stay pending the United States Supreme Court's ruling in *United States v. Rahimi*, 602 U.S. 680 (2024). (ECF 161.) On September 16, 2025, the Court lifted the stay and ordered the parties to submit a proposed briefing schedule for Defendants' renewed motions to dismiss. (ECF 182.) The State and Township Defendants filed a proposed schedule with Plaintiff's consent, but Mediatrice did not respond to co-Defendants' request for consent. (ECF 183.) On November 14, 2025, the State Defendants renewed their motion to dismiss Plaintiff's TAC for failure to state a claim under Fed. R. Civ. P. 12(b)(6). (*See generally* State Mot.) On November 17, 2025, the Township Defendants also renewed their motion to

dismiss Plaintiff's TAC for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  (*See generally* Town Mot.)  On December 1, 2025, Plaintiff opposed Defendants' motions.  (*See generally* Opp. to State; Opp. to City.)  On December 15, 2025, the State and Township Defendants filed their replies.  (*See generally* State Reply; Town Reply.)  Defendant Mediatrice did not file a renewed motion to dismiss.  On December 1, 2025, Plaintiff filed an opposition to Mediatrice's previous motion to dismiss.  (ECF 190, "Opposition to Mediatrice" or "Opp. to Mediatrice.")

## II.    LEGAL STANDARD

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The plausibility standard is satisfied when the Plaintiff alleges sufficient facts "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Although the facts alleged need not be probable, they must "show more than a sheer possibility that a defendant has acted unlawfully."  *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted).

When a Plaintiff files a complaint *pro se*, their "pleadings must be liberally construed." *Alexander v. Gennarini*, 144 F. App'x 924, 2005 WL 1805621, at *2 (3d Cir. 2005).  The arguments of *pro se* litigants "must be held to less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  Courts must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the Plaintiff.  *Phillips v. Ctny. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).  However, when a Plaintiff alleges legal conclusions disguised as factual assertions, or factual assertions that are otherwise unreasonable, the court is under no obligation to accept such allegations as true.  *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007) (holding a court

is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations"). If, after reviewing the pleadings, the court determines that the Plaintiff failed to establish a claim and construed all reasonable facts and inferences in favor of the Plaintiff, the court may dismiss the complaint for failure to state a claim upon which relief can be granted. *Stringer v. Bureau of Prisons, Federal Agency*, 145 F. App'x 751, 2005 WL 2009019, at *1 (3d Cir. 2005).

### III.    ANALYSIS

### A. New Jersey Harassment Statute (Count I)

The New Jersey Harassment Statute is facially constitutional and constitutional as applied to Plaintiff. A person violates the New Jersey Harassment Statute if:

> with the purpose to harass another, [he] (a) [m]akes, or causes to be made, a communication or communications anonymously or at extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm, [or] (c) [e]ngages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person.

N.J.S.A. § 2C:33-4(a) and (c). Plaintiff alleges that subsections (a) and (c) of the New Jersey Harassment Statute are facially unconstitutional, "with a chilling effect on free speech," as these provisions are overbroad and vague. (TAC ¶¶ 55-122.) Defendants argue that the New Jersey Supreme Court has already addressed facial challenges to the statute and found that it is constitutional. (State Mot. at 8-11.) Plaintiff concedes the point but claims that the statute remains overbroad and vague. (Opp. to State at 12-14.)

Laws that infringe on speech must give "fair notice" of where the line is set between what is permissible and proscribed and must be drawn "with appropriate definiteness." *Winters v. New York*, 333 U.S. 507, 510, 515 (1948). The New Jersey Harassment Statute does so. The New Jersey Supreme Court held that subsections (a) and (c) of the statute are facially constitutional.

*See State v. Mortimer*, 135 N.J. 517, 536 (1994) (holding that subsection (a) is facially constitutional); *State v. Burkert*, 231 N.J. 257, 284 (2017) (same for subsection (c)). The *Burkert* court narrowly construed subsection (c) to apply only to "repeated communications directed at a person that reasonably put that person in fear for [her] safety or security or that intolerably interfered with that person's reasonable expectation of privacy." 231 N.J. at 264. Because "the New Jersey Supreme Court [is] the final interpreter of New Jersey law," *MHA, LLC v. Amerigroup Corp.*, No. 18-16042, 2021 WL 1976787, at *6 (D.N.J. May 17, 2021), Plaintiff's facial challenge against the New Jersey Harassment Statute fails.

Plaintiff also argues that Judge Dowd and Judge Spencer unlawfully applied subsections (a) and (c) of the New Jersey Harassment Statute to him. (TAC ¶¶ 55-122.) Defendants point to judicial immunity and argue that Judge Dowd's and Judge Spencer's actions are immune from suit because they acted in their judicial capacity. (State Mot. at 5-8; Town Mot. at 12-16.) Plaintiff responds by asserting that judicial immunity applies only to damages relief, not injunctive relief, and that Judge Dowd and Judge Spencer impermissibly engaged in judicial policymaking. (Opp. to State at 4-12; Opp to Town at 13-21.)

"A judicial officer in the performance of his duties has absolute immunity from suit and will not be liable for his judicial acts." *Azubuko v. Royal*, 443 F.3d 302, 303 (3d Cir. 2006); *see also Ball v. Butts*, 445 F. App'x 457, 458 (3d Cir. 2011) (dismissing a request for injunctive relief for failure to state a claim "because such relief is not available against 'a judicial officer for an act . . . taken in such officer's judicial capacity'" (quoting 42 U.S.C. § 1983)). "Like other forms of official immunity, judicial immunity is immunity from suit, not just from ultimate assessment of damages." *Mireles v. Waco*, 502 U.S. 9, 11 (1991). Judicial immunity is overcome only if (1) the challenged actions were not taken in the judge's judicial capacity or (2) the challenged actions,

7

"though judicial in nature, were taken in complete absence of all jurisdiction." *Id.* at 11-12. Neither exception applies here. Judge Dowd and Judge Spencer acted within their judicial capacity and within their jurisdiction of the New Jersey Family Court by applying constitutional state law, conducting TRO and FRO hearings, and making reasoned judgments against Plaintiff. *See Gallas v. Supreme Court of Pa.*, 211 F.3d 760, 771 (3d Cir. 2000) ("[A] judge does not act in the clear absence of all jurisdiction when the judge enters an order at least colorably within the jurisdiction of her court."); *see also Allen v. Debello*, 861 F.3d 433, 442 (3d Cir. 2017) (finding that family-court judges were not proper defendants in Section 1983 action when they act as "neutral arbiters of the New Jersey custody statute and its policies"). In fact, this Court has already found that:

> Judge Dowd and Judge Spencer articulated numerous instances in which Mutarambirwa "constantly" made "threaten[ing]" and "fright[ening]" communications, as well as engaged in repeated acts of "alarming" conduct towards Mediatrice, including calling her a "bitch" and a "whore" and physically restraining her movements. *See also* ECF No. 52 at 4–8. Such findings are clearly within the realm of proscribed conduct under N.J.S.A.§ 2C:33-4(a) and (c). *Id.* (proscribing "annoy[ing]" communications and repeated instances of "alarming" conduct).

(ECF 53 at 5.)

Plaintiff fails to state a valid claim against the State and Township Defendants for allegedly infringing on his First Amendment rights. The Court has considered whether leave to amend should be granted. *See Free Speech Coal., Inc. v. Att'y Gen. of U.S.*, 677 F.3d 519, 545 (3d Cir. 2012) ("Leave to amend should be freely given when justice so requires, including for a curative amendment unless such an amendment would be inequitable or futile.") Further amendment of Plaintiff's deficient TAC would be futile as to the unconstitutionality claim and the claims barred by judicial immunity. Accordingly, Count I of Plaintiff's TAC is **DISMISSED** with prejudice.

8

**B. New Jersey Prevention of Domestic Violence Act (Counts II-III, VII)**

Like the New Jersey Harassment Statute, the PDVA is facially constitutional and constitutional as applied to Plaintiff.  Under the PDVA, after a finding that there is a danger of domestic violence, a judge may order emergency relief that includes:

> forbidding the defendant from returning to the scene of the domestic violence, forbidding the defendant from possessing any firearm or other weapon enumerated in subsection r. of N.J.S.2C:39-1, ordering the search for and seizure of any firearm or other weapon at any location where the judge has reasonable cause to believe the weapon is located and the seizure of any firearms purchaser identification card or permit to purchase a handgun issued to the defendant and any other appropriate relief.

N.J.S.A. § 2C:25-28(j).  In the TAC, Counts II, III, and VII arise under the PDVA.  Plaintiff claims that the State and Township Defendants' application of the PDVA violated his Second, Fourth, and Fourteenth Amendment rights.  (*See generally* TAC.)

**1.  Second Amendment (Count II)**

Plaintiff alleges that the PDVA is unconstitutional and that the State and Township Defendants unconstitutionally stripped his right to possess a firearm after a finding of a "minor non-violent offense."  (TAC ¶¶ 123-52.)  Defendants point to the Supreme Court's decision in *United States v. Rahimi*, 602 U.S. 680 (2024), where the Court held that "the Second Amendment permits the disarmament of individuals who pose a credible threat to the physical safety of others." (State Mot. at 11-15 (quoting *Rahimi*, 602 U.S. at 693).)  There, the Supreme Court rejected a challenge to 18 U.S.C. § 922(g)(8), which disarms individuals subject to domestic violence restraining orders when there is a finding that they pose a threat of danger.  *Rahimi*, 602 U.S. at 693.  Plaintiff argues that the statute at issue in *Rahimi* differs from the PDVA and thus the PDVA is unconstitutional under the history and tradition test outlined in *N.Y. State Rifle & Pistol Ass'n v.*

*Bruen*, 597 U.S. 1 (2022). (Opp. to State at 15-22.) The Court agrees with Defendants that the PDVA is constitutional as applied to Plaintiff under *Rahimi*'s application of the *Bruen* test.[5]

*Rahimi* explains that the central test for evaluating challenges to statutes that infringe on the Second Amendment is "whether the challenged regulation is consistent with the principles that underpin our regulatory tradition." 602 U.S. at 692 (citing *Bruen*, 597 U.S. at 26-31). Indeed, the test does not require a "historical twin," and a challenged statute that "does not precisely match its historical precursors, . . . 'may be analogous enough to pass constitutional muster.'" *Id.* at 691-92 (quoting *Bruen*, 597 U.S. at 30). Further, the *Rahimi* Court had "no trouble concluding that § 922(g)(8) . . . fits comfortably within th[e] tradition" of protecting potential victims from "individuals who pose a credible threat to the physical safety of others." *Id.* at 690-93. So too here. The PDVA empowers a judge to issue TROs and FROs that restrict firearm ownership for individuals who pose a danger of domestic violence. N.J.S.A. §§ 2C:25-28(f) to (j). Therefore, the PDVA permissibly regulates firearms in accordance with the tradition of protecting potential victims from "individuals who pose a credible threat to the physical safety of others." *See Rahimi*, 602 U.S. at 690.

The New Jersey Family Court issued a FRO against Plaintiff that restricted his access to a firearm after "considering documentary and testimonial evidence from both sides, [and] conclud[ing] that Mutarambirwa committed numerous instances of abusive behavior against Mediatrice and their children, and [finding] that Mutarambirwa was inclined to commit future acts

---

[5] To state a valid facial challenge under the Second Amendment, a plaintiff "must demonstrate that the challenged law is invalid as to *every* set of circumstances to which applied." *Piszczatoski v. Filko*, 840 F. Supp. 2d 813, 820 (D.N.J. 2012) (emphasis added). Having found that the PDVA is constitutional as applied to Plaintiff, the Court also finds that the facial challenge to the statute fails. *See United States v. Mitchell*, 652 F.3d 387, 415 (3d Cir. 2011) ("[Plaintiff's] facial challenge to the statute fails. Because the statute is constitutional as applied to [plaintiff], he has not shown that there is no set of circumstances under which the statute may be applied constitutionally.").

of violence." (ECF 53, Op. at 2 (citing ECF 52-1 at 4-8)); *see also* N.J.S.A. § 2C:25-19(a)(13). "Plaintiff's prior conduct places him squarely within the class of individuals prohibited from firearm ownership" under the operative history and tradition test because Plaintiff "pose[s] a credible threat to the physical safety of others." (ECF 182, Op. at 6); *Rahimi*, 602 U.S. at 690. Moreover, Plaintiff's allegation that he did not physically harm Mediatrice or commit a violent offence does not change the analysis. The Third Circuit explains that an individual may still "pose a physical danger to others" even if his predicate conduct of harassment "did not plausibly involve the use of force or physical injury." *See Pitsilides v. Barr*, 128 F.4th 203, 211 (3d Cir. 2025). The New Jersey Family Court found Plaintiff to be a danger to Mediatrice as his behavior "was designed in such a fashion to annoy [Mediatrice] and force her back into the marital bedroom." (*See* ECF 52-1 at 16.)

Plaintiff fails to state a valid claim against the State and Township Defendants for allegedly infringing on his Second Amendment right. Further amendment of Plaintiff's deficient TAC would be futile under controlling law as to the claims that the PDVA is facially unconstitutional and unconstitutional as applied to Plaintiff. Accordingly, Count II of Plaintiff's TAC is **DISMISSED** with prejudice.

### 2. Fourteenth Amendment (Count III)

Plaintiff alleges that the State and Township Defendants unconstitutionally applied the PDVA to strip him of custody of his two children. (TAC ¶¶ 153-67.) "[T]he Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 66 (2000). However, parental rights are not absolute. *See Croft v. Westmoreland Ctny. Children & Youth Servs.*, 103 F.3d 1123, 1125 (3d Cir. 1997). "Rather, [parental interests are] balanced against

11

the government's compelling interest in the protection of minor children, particularly in circumstances where the protection is considered necessary as against the parents themselves." *R.B. v. Westmoreland Ctny.*, 526 F. App'x 181, 185 (3d Cir. 2013). To plead a sufficient claim under the Due Process Clause, a plaintiff must allege that the government "has abused its power in an arbitrary manner that 'shocks the conscience.'" *Mammaro v. N.J. Div. of Child Prot. & Permanency*, 814 F.3d 164, 169 (3d Cir. 2016).

The New Jersey Family Court temporarily restricted Plaintiff's custody of his children after finding that Plaintiff "shouted vulgar and threatening language directed at his children, accused his children of lewd sexual behavior, and verbally and physically abused the mother of his children while the children were present." (ECF 53, Op. at 8-9.) Such reasoned judgment, performed in the context of Judge Dowd's and Judge Spencer's judicial capacity, does not plausibly rise to the level of abuse of power nor does it "shock the conscience." *See Mammaro*, 814 F.3d at 169. Plaintiff's claim does not overcome Judge Dowd's and Judge Spencer's judicial immunity. *See Mireles v. Waco*, 502 U.S. 9, 11-12 (1991).

Plaintiff fails to state a valid claim against the State and Township Defendants for allegedly encumbering his parental rights under the Fourteenth Amendment. Further amendment of Plaintiff's deficient TAC would be futile as the claims are barred by judicial immunity. Accordingly, Count III of Plaintiff's TAC is **DISMISSED** with prejudice.

### 3. Fourth Amendment (Count VII)

Plaintiff alleges that the State and Township Defendants permitted a judge to order a search of Plaintiff's biometric gun safe based on less than probable cause in violation of the Fourth Amendment. (TAC ¶¶ 222-36.) About a year after the issuance of the FRO that forbade Plaintiff from owning a firearm, the New Jersey Family Court ordered a search of Plaintiff's biometric gun

safe purchased before issuance of the TRO and FRO and left at his former residence.  (*Id.*) Mediatrice found the safe in the home that she shares with their two children and was concerned that it may contain a firearm.  (*Id.*)  Under the PDVA, a judge may order a "search for and seizure of any firearm or other weapon at any location where the judge has reasonable cause to believe the weapon is located . . . ."  N.J.S.A. § 2C:25-28(j).

The New Jersey Supreme Court has narrowly construed the PDVA to conform to the Fourth Amendment.  *State v. Hemenway*, 239 N.J. 111, 117 (2019).  The *Hemenway* Court established a three-prong probable cause test that a court must satisfy before issuing a warrant to search for and seize firearms under the PDVA.[6]  *Id.*  "Transposed into the context of a domestic violence search warrant for weapons, probable cause requires that the issuing court only have a well-grounded suspicion."  *Id.*  First, this Court will not disturb the New Jersey Family Court's finding that a search of Plaintiff's gun safe was warranted.  Under the *Rooker-Feldman* doctrine, "federal district courts lack subject matter jurisdiction to evaluate constitutional claims that are 'inextricably intertwined with the state court's [decision] in a judicial proceeding.'"  *Blake v. Papadakos*, 953 F.2d 68, 71 (3d Cir. 1990) (quoting *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 483 n.16 (1983)).  Assuming *arguendo* that the *Rooker-Feldman* doctrine is inapposite, as Plaintiff argues, *see* Opp. to Town at 30-32, the three-prong probable cause test is met.[7]

---

[6]  The issuing court must find "(i) probable cause to believe an act of domestic violence has been committed by the defendant; (ii) probable cause to believe a search for, and seizure of, weapons is 'necessary to protect the life, health or well-being of a victim on whose behalf the relief is sought;' and (iii) probable cause to believe that the weapons are located in the place to be searched."  *Id.* (quoting N.J.S.A. § 2C:25-28(f)).

[7] There was at least a "well-grounded suspicion" that (i) Plaintiff committed domestic violence as the FRO was issued and upheld; (ii) a search for a firearm was necessary to protect Mediatrice and their children; and (iii) a firearm owned by Plaintiff would be located in a biometric gun safe

Plaintiff fails to state a valid claim challenging the State and Township Defendants' conduct under the Fourth Amendment.  Further amendment of Plaintiff's deficient TAC would be futile under controlling law as to Count VII.  Accordingly, Count VII of Plaintiff's TAC is **DISMISSED** with prejudice.

### C. Malicious Use of Process (Count IV)

Plaintiff alleges that the Township Defendants and Defendant Mediatrice engaged in malicious use and abuse of process as to Mediatrice's allegation of assault by Plaintiff at the FRO hearing.  (*See* TAC ¶¶ 168-78.)  To state a valid claim under malicious use of process, a plaintiff must show that

> (1) a [civil] action was instituted by this defendant against this plaintiff; (2) the action was motivated by malice; (3) there was an absence of probable cause . . . ; and (4) the action was terminated favorably to plaintiff . . . ; [and (5)] the plaintiff has suffered a special grievance caused by the institution of the underlying civil claim.

*LeBiondo v. Schwartz*, 199 N.J. 62, 89-90 (2009).  Alternatively, Plaintiff asserts a malicious abuse of process claim under 42 U.S.C. § 1983.  To state a valid claim under § 1983, a plaintiff "must assert that the defendants have acted under color of state law to deprive [him] of a personal constitutional right."  *Voytko v. Ramada Inn of Atlantic City*, 445 F. Supp. 315, 325 (D.N.J. 1978).  In § 1983 actions, "federal courts must ascertain the underlying cause of action under state law."  *Jennings v. Shuman*, 567 F.2d 1213, 1216 (3d Cir. 1977).  Here, the underlying cause of action is the state tort of malicious abuse of process, which requires two elements: "(1) the defendant has set legal process in motion for an improper ulterior purpose, and (2) the defendant has committed

---

purchased by Plaintiff a year before the FRO forbade him from owning one.  *See Hemenway*, 239 N.J. at 117.

a willful act in the use of process which perverts the regular conduct of the proceeding to accomplish the improper purpose." *Voytko*, 445 F. Supp. at 325.

Plaintiff is unable to meet the first element under either cause of action as to the Township Defendants because Defendant Mediatrice, not the Township Defendants, initiated the TRO civil action against Plaintiff.  (TAC ¶ 17.)  Because Plaintiff fails to state a valid claim, and further amending the deficient TAC would be futile, Count IV is **DISMISSED** with prejudice as to the Township Defendants.

Malicious use of process is the only applicable cause of action as to Defendant Mediatrice because she is private entity.  Applying the standard set forth in *LeBiondo*, Plaintiff is unable to plausibly meet the second element.  "Malice . . . is defined as the 'intentional doing of a wrongful act without just cause or excuse.'"  *LeBiondo*, 199 N.J. at 93-94.  In April 2020, Mediatrice initiated a TRO proceeding against Plaintiff because he

> YELLED AT HER AND KEPT HER FROM SLEEPING BY MAKING LOUD NOISES AND DEFLATING THE AIR MATTRESS THAT SHE HAS BEEN SLEEPING ON. [MEDIATRICE] STATES THAT MR. MUTARAMBIRWA CONSTANTLY YELLS AT HER AND CALLS HER "STUPID, LIAR, BITCH."

(*Id.* (emphasis in original).)  Mediatrice amended her report to allege Plaintiff assaulted her in addition to the alleged harassment.  (*Id.* ¶ 19.)  According to Mediatrice, Plaintiff pulled a mattress while she was on it "causing her to fall and feel pain." (ECF 52-1 at 6.)  Plaintiff admitted that he moved the mattress but denied Mediatrice was on it.  (*Id.*)  After a two-day trial, the New Jersey Family Court held that Mediatrice "had not proven assault ***given the parties' conflicting testimony***." (*Id.* at 8 (emphasis added).)  This Court must liberally construe *pro se* pleadings, but it need not credit "bald assertions" or "legal conclusions." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).  Plaintiff claims that Mediatrice amending her report to include an

assault allegation after consulting with counsel is evidence of malice.  (TAC ¶ 174.)  This is a baldly asserted legal conclusion, not plausible factual evidence of intentional wrongdoing.

Plaintiff fails to allege facts that plausibly assert a malicious use of process claim. Therefore, Plaintiff fails to state a valid claim in Count IV as to Defendant Mediatrice.  Plaintiff argues that any dismissal of Count IV should be without prejudice as he has "many additional facts showing malice."  (Opp. to Mediatrice at 11.)  Given that Plaintiff has amended his complaint three times and has not included his alleged "many additional facts," this Court holds that it would be futile to permit further amendment of his deficient complaint against *pro se* Defendant Mediatrice.  *See Free Speech Coal.*, 677 F.3d at 545.  Accordingly, Count IV is **DISMISSED** with prejudice as to Defendant Mediatrice.

## D. Equal Protection (Count V)

Plaintiff alleges that the State and Township Defendants have a custom and practice of granting restraining orders to women while denying them to men who allege similar circumstances in violation of the Equal Protection Clause.  (TAC ¶¶ 179-94.)

### 1. State Defendants

To state a valid Equal Protection Clause claim, a plaintiff must demonstrate that "(1) [he], compared with others similarly situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations." *Rose v. City of Allentown*, 211 F. App'x 133, 139 (3d Cir. 2007).  "Discriminatory intent 'implies that the decision-maker . . . selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group.'" *Antonelli v. New Jersey*, 419 F.3d 267, 274 (3d Cir. 2005) (quoting *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979)).

16

First, Plaintiff fails to plead any facts that show the State Defendants treated him differently under the PDVA. *Andrews*, 895 F.2d at 1478. Plaintiff baldly asserts that "New Jersey . . . [has] a custom and practice of granting Domestic Violence restraining orders to women while denying them to men based on equally serious or even more serious allegations." (TAC ¶ 180.) But it appears that Plaintiff did not attempt to apply for a TRO in the New Jersey Family Court. (*See id.* ¶¶ 179-94.) Second, Plaintiff fails to plead any facts that show that the State Defendants are motivated by discriminatory intent. Therefore, Plaintiff fails to state a valid Equal Protection Clause claim. Again, the Court must liberally construe *pro se* pleadings, but it need not credit "bald assertions" or "legal conclusions." *Morse*, 132 F.3d at 906. Because further amendment of Plaintiff's deficient TAC would be futile under controlling law, Count V is **DISMISSED** with prejudice as to the State Defendants.

### 2. Township Defendants

A municipality may be held liable under § 1983 only if its official policy or custom causes a constitutional injury. *See Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) ("When a suit against a municipality is based on § 1983, the municipality can only be liable when the alleged constitutional transgression implements or executes a policy, regulation or decision officially adopted by the governing body or informally adopted by custom." (citing *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 658 (1978))). In other words, the plaintiff must show that the municipality, through one of its policymakers, affirmatively proclaimed the policy or acquiesced in the widespread custom that caused the violation. *Watson v. Abington Twp.*, 478 F.3d 144, 155-56 (3d Cir. 2007).

Plaintiff baldly asserts that "West Orange has an established policy of not taking male complaints of harassment seriously." (TAC ¶ 188.) Plaintiff alleges that the West Orange Police

17

Department refused to take Plaintiff's report of harassment against him by Mediatrice on May 22, 2020, a week after Judge Spencer issued the FRO against Plaintiff for harassing Mediatrice. (*Id.* ¶¶ 21-23, 179-94.) Plaintiff's single assertion does not plausibly establish that the Township acquiesced to a widespread custom of disparate treatment. Therefore, Plaintiff fails to state a valid § 1983 claim under *Monell*. Because further amendment of Plaintiff's deficient TAC would be futile under controlling law, Count V is **DISMISSED** with prejudice as to the Township Defendants.

### E. <u>Gag Order (Count VI)</u>

Plaintiff alleges that Judge Spencer's June 12, 2020 Gag Order prohibiting Plaintiff from making disparaging remarks about Mediatrice in front of their children is unconstitutional. (TAC ¶¶ 195-221.) The *Younger* doctrine states that federal courts should not entertain requests to enjoin state criminal prosecutions, "particularly . . . when the moving party has an adequate remedy" in state court. 401 U.S. 37, 43 (1971). "[T]he Supreme Court has . . . extended *Younger*'s application to bar federal interference with certain state civil and administrative proceedings." *ACRA Turf Club, LLC v. Zanzuccki*, 748 F.3d 127, 132 (3d Cir. 2014). The Court held that "civil proceedings involving certain orders . . . uniquely in furtherance of the state courts' ability to perform their judicial functions" triggers *Younger* abstention. *Sprint Communs., Inc. v. Jacobs*, 571 U.S. 69, 78 (2013). After a court finds that a proceeding triggers *Younger*, it should consider "whether '(1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal claims.'" *Malhan v. Sec'y U.S. Dep't of State*, 938 F.3d 453, 462 (3d Cir. 2019) (quoting *Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423 (1982)).

Here, Judge Spencer's Gag Order is an order in furtherance of the New Jersey Family Court's ability to perform its judication function. *See Argen v. Katz*, No. 18-963, 2021 U.S. Dist. LEXIS 127121, at *6 (D.N.J. July 8, 2021) ("[R]uling on Plaintiff['s] challenge to the Gag Order would improperly interfere with the state court's ability to limit the conduct of a litigant during proceedings, which is necessary to further that 'court's ability to perform its judicial functions.'" (quoting *Silver v. Court of Common Pleas*, 802 F. App'x 55, 58 (3d Cir. 2020))). A Gag Order "seeks to preserve the state court's power to further one of its uniquely judicial functions – promoting and protecting the best interests of a child whose custody had been previously adjudicated by the court." *Silver*, 802 F. App'x at 58. Therefore, *Younger* is applicable, and the Court considers the three *Middlesex* factors in deciding whether to abstain. All three factors weigh in favor of abstention: (1) the judicial proceedings governing Plaintiff's custody are ongoing; (2) family-court proceedings implicate a traditional area of state concern; and (3) Plaintiff may raise federal legal issues before the New Jersey Family Court if he seeks to revise the FRO or custody order.

Under the dictates of *Younger* and its progeny, this Court abstains from reaching the merits of Plaintiff's claims in Count VI.[8] Because further amendment of Plaintiff's deficient TAC would be futile under controlling law, Count VI is **DISMISSED** with prejudice.

## IV. <u>CONCLUSION</u>

For the reasons stated above, the State and Township Defendants' Motions to Dismiss Plaintiff's Third Amended Complaint are **GRANTED**. Counts I-VII against Defendants are **DISMISSED** with prejudice. An appropriate order follows.

---

[8] State Defendants argue that the Gag Order is constitutional as it comports with the First Amendment. (State Mot. at 30-34.) The Court need not reach the merits of whether the Gag Order comports with the First Amendment and refrains from doing so.

19

*/s/ Jamel K. Semper*
**HON. JAMEL K. SEMPER**
**United States District Judge**

Orig:  Clerk
cc:    Jose R. Almonte, U.S.M.J.
       Parties